IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| TAMERA HANCOCK, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.   14-CV-380-RAW |
| v. | ) | |
| | ) | |
| (1)  OKLAHOMA DEPARTMENT OF CORRECTIONS, a Governmental Agency; | ) ) ) | |
| (2)  MIKE MULLIN, in his Individual Capacity and in his Official Capacity; | ) ) | |
| (3)  DAVID MEALER, in his Individual Capacity and in his Official Capacity; | ) ) | |
| (4)  KEVIN COLLINS, in his Individual Capacity and in his Official Capacity; | ) ) | |
| (5)  JASON LANE, in his Individual Capacity and in his Official Capacity; | ) ) | |
| (6)  ARDEN ESPE, in his Individual Capacity and in his Official Capacity; | ) ) | |
| (7)  EDWARD BELL, in his Individual Capacity and in his Official Capacity; | ) ) | |
| (8)  SGT (FNU) FEW; in his Individual Capacity and in his Official Capacity; | ) ) | |
| (9)  PHILIP CAREY, in his Individual Capacity and in his Official Capacity; | ) ) | |
| (10) REGIE BRADLEY, in his Individual Capacity and in his Official Capacity; | ) ) | |
| (11) CASEY BENNEFIELD, in his Individual Capacity and in his Official Capacity; | ) ) | |
| (12) (FNU LNU), Firearms Instructor, in his Individual Capacity and in his Official Capacity; | ) ) ) | |
| (13) GREGORY STOCKTON, in his Individual Capacity and in his Official Capacity; | ) ) | |
| (14) VICKI KYZER, in her Individual Capacity and in his Official Capacity; and | ) ) ) | |
| (15) RANDALL HALL, in his Individual Capacity and in his Official Capacity; Defendants. | ) ) | |

COMPLAINT

COMES NOW Tamera Hancock "Hancock"), Plaintiff herein, by her counsel of record, Neal Kirkpatrick, and for her Complaint against the Defendants Oklahoma Department of Corrections ("DOC"), Michael Mullin ("Mullin"), David Mealer ("Mealer"), Kevin Collins ("Collins"), Jason Lane ("Lane"), Arden Espe ("Espe"), Edward Bell ("Bell"), Sgt. (FNU) Few ("Few"), Philip Carey ("Carey"), Regie Bradley ("Bradley"), Casey Bennefield ("Bennefield"), (FNU LNU), Firearms Instructor ("FNU LNU"), Gregory Stockton ("Stockton"), Vicki Kyzer ("Kyzer"), and Randall Hall ("Hall"), in their individual capacity and in their official capacities as employees and on behalf of the Oklahoma Department of Corrections (collectively, "Defendants"), would show that:

1.     Hancock is a resident of Muskogee, Oklahoma. On December 13, 2012, Hancock filed a charge of discrimination against Defendants with the Equal Employment Opportunity Commission ("EEOC"), pursuant to Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. § 2000e *et seq* and the Oklahoma Anti-Discrimination Act pursuant to Okla. Stat.tit.25 § 1350 *et.seq.*, alleging hostile work environment, sexual harassment, retaliatory conduct, failure to promote, and gender discrimination. A Notice of Right to Sue was received by Hancock from the EEOC on June 8, 2014. The instant action is filed within ninety (90) days of receipt of the Notice of Right to Sue.

2.     DOC is an Oklahoma governmental agency conducting regular activity in Muskogee County, Oklahoma. DOC regularly employs more than fifteen (15) employees at its facility in Muskogee, Oklahoma.

3.     At all times material to the allegations alleged in this Complaint, Mullin, Mealer, Collins. Lane, Espe, Bell, Bennefield, Few, Carey, Bradley, "FNU LNU" (a firearms instructor), Stockton,

Kyzer, and Hall were employed by the DOC worked at the Jess Dun Correctional Facility ("Facility") with Hancock in Taft, Muskogee County, Oklahoma and were acting within the course and scope of their employment.

4. The conduct complained of in this Complaint occurred at the Facility in Taft, Muskogee County, Oklahoma.

5. This is an action for damages and to secure protection of and to redress deprivation of rights secured by Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. § 2000e *et seq.*, providing for relief from hostile work environment on the basis of gender, as well as 42 U.S.C. § 1983, providing for relief against the deprivation of rights and privileges secured to Hancock by the Constitution of the United States of America for violations by the Defendants while acting under the color of law.

6. Jurisdiction of the Court is proper under §706(f)(3) of Title VII, 42 U.S.C. § 2000e(f)(3). In addition, jurisdiction of the Court is invoked pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1343, and 28 U.S.C. § 1337.

7. This action properly lies in the United States District Court for the Eastern District of Oklahoma, pursuant to 28 U.S.C. § 1391(b), as the unlawful employment practices of herein occurred within the Eastern District of Oklahoma and because Defendant, DOC, is a governmental entity conducting regular business activity in the Eastern District of Oklahoma.

<u>General Allegations Common to All Claims</u>

8. Hancock began her employment at the Facility in 2010.

9. Between January and May, 2011, on an occasion that Hancock was assigned to the

switchboard, she asked Mealer about DOC policies concerning firearms. Mealer told Hancock she was asking too many questions and did not need to know policies in detail.

10.     Between June 2011 and the present, Hancock made numerous requests for overtime equal to that which male counterparts were afforded. Mealer told Hancock to stop being so helpful as she was "pissing off" a lot of the officers.

11.     From June to September 2011, Hancock was not allowed to work the housing units while other male officers who had complete the academy with her were allowed to do so. Hancock was the only certified officer assigned to the switchboard. Male Officers Jeff Drain, Carl Rackley, and Mitch Winters were assigned to work in the housing units immediately following graduation from the academy. Hancock was not, even though she was told by Collins that when she came back she would not have to work the switchboard.

12.     From June 2011 until she was terminated from DOC, Hancock's assigned posts were 301, 303, or the DW Bus. Collins told Hancock that she had to do her time, and that when new cadets returned from the academy they would have to do their time. Nevertheless, only women were assigned to Posts 301, 303, or the DW bus. Male cadets were assigned to the housing units or to transporting inmates.

13.     In 2011, Hancock was assigned to the Segregated Housing Unit (SHU) as the second officer, when Lane told her to ask the inmates who wanted to go outside for recreation. Hancock went to every cell and asked; seven (7) inmates said they desired recreation. Lane and Espe both harshly admonished Hancock that in the future she should never ask every cell if they desired recreation. Instead, she should go to the center of the unit run and whisper the request because

"these motherfuckers don't need to go out, and that since she had gone to each cell, Lane and Espe had to chain the inmates for recreation.

14. In February 2012, Hancock learned she was about to be assigned to the midnight to 8 AM shift. Hancock and her husband had recently separated, and if she was assigned to that shift, she would have to leave her children alone at night. Hancock asked Bell if she could be allowed to remain on her present shift until she could make arrangements for the care of her children. Bell refused. Later, Collins told Hancock she should not complain or request not to be placed on a particular assignment because JDCC chain of command would give her that very assignment as retaliation.

15. In early 2012, Hancock learned she was to be reassigned from DW bus to the switchboard by Bennefield. In order to be sure to wear the proper clothing Hancock asked if the reassignment was to take place the following day; Bennefield replied that it was. The following day, Hancock reported for work wearing clothing appropriate for working the switchboard. Bennefield told her that she was to work on the DW bus outside instead. Hancock replied that she could not work outside without proper clothing, and was ordered to report to Bell's office.

16. In early 2012, Hancock approached Bell and complained that while she had requested to be trained to conduct shakedowns, searches for weapons and contraband, and other functions carried out by correctional officers, she had been denied that training. Bell replied to the effect that that was how things had been at JDCC for 20 years, and it would never change. Not properly training female officers at JDCC severely affected the safety and security of those female officers, including Hancock. When Hancock sought out such training, she was subjected to ridicule, criticism

and other harsh treatment.

17.     In March, 2012, Hall to Hancock to report to the PWP to learn the paperwork for prisoner urinalysis training. When she did so, she was told by Mealer to leave and do door checks, and was effectively denied the urinalysis training, which was afforded to male officers lower in rank than Hancock. Later, when Hancock tried to learn the proper procedure on her own, Few learned of it and became angry and punched the wall. Bennefield, alerted by the commotion, told Hancock that few was upset, because he felt her attempting to learn procedures on her own was acting against the orders of superior officers. Hancock told Bennefield that she felt threatened by Few's outburst. Bennefield ignored Hancock's concern, acting as if such outbursts were commonplace and expected.

18.     During March of 2012, Hancock learned that there was to be a marijuana drop at the South Farm. Mealer told her to ignore the information and just conduct her door checks.

19.     On August 31, 2012, Chief Bell called Hancock to his officer regarding her scheduling. Bell told her that this job was not for her and that as a single mother she needed to get another job.

20.     On September 4, 2012, Hancock was assigned to the DW bus. Two offenders trapped Hancock between F Gate and the transport van and threatened her for requesting the canteen receipts that each inmate was carrying. Hancock ordered the inmates to move away, but both refused. Hancock then used her radio to request assistance from Cultrera, and the inmates complied. Hancock wrote an incident report, but neither inmate was ever disciplined.

21.     On September 18, 2012, Hancock was told by Carey to attend a suicide prevention seminar or be subject to discipline, even though Carey knew that Hancock was on FMLA leave to care for

her son who had broken both of his arms. Carey said that he had spoken to Hancock's superiors and they had said she had been offered the class previously but had refused. Hancock had not, in fact, been offered the training. Similar training was offered at the Eddie Warrior Correctional Facility the next week, but Hancock was denied the opportunity to take the training then.

22. In September, 2012, Hancock's children were threatened by an inmate. Hancock reported the incident to Carey. When Carey asked her what she wanted done with the inmate, Hancock asked that the inmate be removed from the area to which she was assigned. Carey told Hancock to write an incident report, and advised that the inmate would be disciplined. No disciplinary action was ever taken as a result of this incident.

23. In October, 2012, Hancock conducted a search of an inmate's cell and found a radio belonging to another inmate. The radio was considered contraband subject to seizure. However, Bradley ordered Hancock to return the radio to the offender. Hancock refused. Hancock write a misconduct report on the offender but the report was never acted upon.

24. In October, 2012, while at the firearms range for instruction, Hancock was placed at the far end of the firing line and could not hear the instructor's commands. Accordingly, she did not receive the training her male counterparts did.

25. On October 31, 2012, Hancock was assigned to transport three offenders to Muskogee for medical treatment. Instead, she was removed from that assignment by Stockton, who noted that "we do what we want" regarding shift changes. Hancock had never seen a male officer so reassigned; she was not allowed to go on transport because she was a female.

26. On October 31, 2012, Hancock was yelled at by Kyzer, who claimed Hancock had filled out

logs incorrectly. Hancock replied that she had filled out the logs in exactly the same way a male officer had done so previously.

27. On November 4, 2012, Hall accused Hancock of having an inmate escort her to the bathroom to conduct a head count on the unit. The offender did not escort Hancock to the bathroom, but only assisted her, as he had done many times before with Sgt. Rye, a male officer. Despite her denial and lack of corroborating information, Hall continued to falsely accuse Hancock.

28. During her employment at JDCC, Hancock repeatedly requested overtime which was denied. Male officers were routinely afforded overtime.

## COUNT I - TITLE VII-HOSTILE WORK ENVIRONMENT

29. Hancock repleads all material allegations set forth in paras. 8-28 above.

30. The allegations contained in paras. 8-28 above state a claim against Defendants for Title VII-Hostile Work Environment by continually subjecting Hancock to a hostile work environment based on her gender and by failing to properly ensure a non-hostile work environment.

WHEREFORE, Hancock respectfully requests that this Court grant her judgment against Defendants on her claim for Title VII-Hostile Work Environment and award her: (1) back pay and lost benefits; front pay until normal retirement; (2) compensatory damages for her mental anguish, pain and suffering and other non-pecuniary losses; (3) attorney's fees and costs and expenses of this action; and (4) and all other relief to which Hancock may show herself entitled.

## COUNT II-TITLE VII-RETALIATION

31. Hancock repleads all material allegations set forth in paras. 8-28 above.

32. The allegations contained in paras. 8-28 above state a claim against Defendants for Title

VII-Retaliation by changing the terms and assignments of Hancock's employment in retaliation for her participation in protected activity as defined under Title VII.

WHEREFORE, Hancock respectfully requests that this Court grant her judgment against Defendants on her claim for Title VII-Retaliation and award her: (1) back pay and lost benefits; front pay until normal retirement; (2) compensatory damages for her mental anguish, pain and suffering and other non-pecuniary losses; (3) attorney's fees and costs and expenses of this action; and (4) and all other relief to which Hancock may show herself entitled.

COUNT III-TITLE VII-FAILURE TO PROMOTE

33. Hancock repleads all material allegations set forth in paras. 8-28 above.

34. The allegations contained in paras. 8-28 above state a claim against Defendants for Title VII-Failure to Promote by continually failing to promote Hancock for any legitimate, non-discriminatory purpose after she applied for an open position that she was qualified to perform.

WHEREFORE, Hancock respectfully requests that this Court grant her judgment against Defendants on her claim for Title VII-Failure to Promote and award her: (1) back pay and lost benefits; front pay until normal retirement; (2) compensatory damages for her mental anguish, pain and suffering and other non-pecuniary losses; (3) attorney's fees and costs and expenses of this action; and (4) and all other relief to which Hancock may show herself entitled.

COUNT IV-TITLE VII-GENDER DISCRIMINATION

35. Hancock repleads all material allegations set forth in paras. 8-28 above.

36. The allegations contained in paras. 8-28 above state a claim against Defendants for Title

VII-Hostile Work Environment by continually subjecting Hancock to a hostile work environment based on her gender and by failing to properly ensure a non-hostile work environment.

WHEREFORE, Hancock respectfully requests that this Court grant her judgment against Defendants on her claim for Title VII-Gender Discrimination and award her: (1) back pay and lost benefits; front pay until normal retirement; (2) compensatory damages for her mental anguish, pain and suffering and other non-pecuniary losses; (3) attorney's fees and costs and expenses of this action; and (4) and all other relief to which Hancock may show herself entitled.

COUNT V-VIOLATION OF 42 U.S.C. § 1983

37. Hancock repleads all material allegations set forth in paras. 8-28 above.

38. The allegations contained in paras. 8-28 above state a claim against Defendants, as persons at JDCC for administering and maintaining discipline, for violation of 42 U.S.C. § 1983 by: (1) approving of the intentional and hostile work environment at JDCC by failing to remedy Hancock's complaints, in violation of her rights under the Fifth and the Equal Protection Clause of the Fourteenth Amendments to the Constitution of the United States; and (2) engaging in disparate treatment of male and female employees with regard to discipline.

WHEREFORE, Hancock§ respectfully requests that this Court grant her judgment against Defendants on her claims for Violation of 42 U.S.C. § 1983, and award her: (1) back pay and lost benefits; front pay until normal retirement; (2) compensatory damages for her mental anguish, pain and suffering and other non-pecuniary losses; (3) attorney's fees and costs and expenses of this action; and (4) and all other relief to which Hancock may show herself entitled.

COUNT VI-GENDER DISCRIMINATION PURSUANT TO OKLA. STAT. TIT.25 §§1101 and 1302

39. Hancock repleads all material allegations set forth in paras. 8-28 above.

40. The allegations contained in paras. 8-28 above state a claim against Defendants for Gender Discrimination pursuant to Okla. Stat. Tit. 25, §§ 1101 and 1302.

WHEREFORE, Hancock respectfully requests that this Court grant her judgment against Defendants on her claim for Title VII-Hostile Work Environment and award her: (1) back pay and lost benefits; front pay until normal retirement; (2) compensatory damages for her mental anguish, pain and suffering and other non-pecuniary losses; (3) attorney's fees and costs and expenses of this action; and (4) and all other relief to which Hancock may show herself entitled.

JURY TRIAL DEMANDED

Plaintiff demands a jury trial on all questions of fact raised by this Complaint.

Respectfully submitted,

/s Neal Kirkpatrick

NEAL KIRKPATRICK, OBA #22801
2021 South Lewis, Suite 335,
Tulsa, Oklahoma 74104
918.646.4060 (Office
918.949.4237 (Fax)
neal@nkirkpatricklaw.com